IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Isabella H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-07058 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| Frank Bisignano, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER[2]

Before the Court are Plaintiff Isabella H.'s motion for summary judgement (Dkt. 10: Mot. Summ. J., "Pl. Mot."), Defendant's memorandum in support of motion for summary judgment (Dkt. 13: Def. Mem. Supp. Mot. Summ. J., "Def. Mem."), and Plaintiff's reply (Dkt. 14: Plaintiff's Reply Brief, "Pl. Reply").

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.
[2] On July 1, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 6).

## I. Procedural History

Plaintiff applied for child disability benefits on June 21, 2022 (R. 257) and supplemental security income on April 28, 2022. (R. 241.) In both applications, Plaintiff alleged disability beginning on October 10, 2016. (R. 247, 257.) Plaintiff's claims were initially denied on February 15, 2023 (R. 60-89), and upon reconsideration on October 26, 2023. (R. 90-98.)[3] ALJ Edward Studzisnki ALJ held an in-person hearing on Plaintiff's claims on April 24, 2024. (R. 35-59.)

On July 1, 2024, the ALJ issued a decision finding Plaintiff not disabled. (R. 12-34.) Plaintiff subsequently appealed.[4] For the reasons discussed below, the Court denies Plaintiff's request for remand and grants Defendant's motion.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 17.) At Step

[3] The record indicates that Plaintiff applied for child's insurance benefits on the accounts of both of her parents (R. 257, 266) and these applications were denied at the initial level in February 2023 (R.62-70, 81-89). The record does not include the denial of these applications at the reconsideration stage, although denial is referenced in the ALJ's decision (R. 15), Plaintiff's counsel confirmed the record was complete following the hearing (R. 416), and neither party has made issue of this omission.

[4] The Appeals Council subsequently denied review of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

Two, the ALJ determined that Plaintiff had the severe impairments of anxiety, depression, and post-traumatic stress disorder. (*Id.*) The ALJ also found that Plaintiff had the nonsevere impairment of obesity. (R. 18.)

The ALJ found that none of Plaintiff's impairments met or equaled a listing at Step Three. (*Id.*) Because Plaintiff claimed mental impairments, the ALJ evaluated their severity and whether they met a listing against the four "Paragraph B" functional areas as required in the regulations. The ALJ found that Plaintiff had moderate limitations in all four functional areas: understanding, remembering, and applying information; interacting with others; concentrating, persisting and maintaining pace; and adapting and managing herself. (R. 18-19.)

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with no restriction of her ability to lift and/or carry, sit, stand, or walk throughout an eight-hour workday. (R. 20.) The ALJ limited Plaintiff to

> working in non-hazardous environments, i.e., no driving at work, operating moving machinery, or working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas. The claimant can deal with occasional changes in a routine work setting.

(*Id.*)

At Step Four, the ALJ found that Plaintiff had no past relevant work. (R. 25.) The ALJ determined that Plaintiff is defined as a younger individual with at least a high school education. (*Id.*) At Step Five the ALJ found that there were jobs that existed in the national economy Plaintiff could perform, including lab equipment cleaner, cleaner, and cleaner II. (R. 26.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five "steps" in order: (1) Is the claimant engaging in substantial gainful activity? (2) Does the plaintiff have a severe impairment or combination of impairments? (3) Does the claimant's impairment(s) meet or medically equal one of the impairments listed in the regulations? (4) Is the claimant able to perform her past relevant work? and (5) Is the

claimant able to adjust to any other work? 20 C.F.R. § 404.1520(a)(4).[5] Between Steps Three and Four, the ALJ determines the claimant's RFC, which is defined as the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

If the claimant is engaging in substantial gainful activity under Step One, does not have an impairment or combination of impairments as described at Step Two, can perform past relevant work under Step Four, or can adjust to other work under Step Five, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment that meets or equals the requirements of Step Three or is incapable of adjusting to other work under Step Five, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v). The claimant has the burden of proof at Steps One through Four. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden shifts to the Commissioner. *Id.*

This sequential disability analysis also applies to disabled child's benefits claims such as this case where the claimant is 18 years or older and alleges a disability that began before age 22. *See* 20 C.F.R. § 404.350(a)(5). An adult applicant who seeks disabled child's benefits must show that she had "a disability that continued unabated from before the applicant's 22nd birthday to the time of the filing of the application." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024).

[5] The regulations that govern child's insurance benefits (20 C.F.R. Part 404) and supplemental security income (20 C.F.R. Part 416) are virtually identical in all relevant respects. Accordingly, the Court will cite to the regulations found in 20 C.F.R. Part 404.

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit stated, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve

debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

IV. Analysis

Plaintiff makes three arguments in favor of remand. First, Plaintiff asserts that the ALJ erred in finding at Step Three that Plaintiff's mental impairments did not meet or equal a listing. (Pl. Mot. 5-10.) Second, Plaintiff claims the ALJ failed to properly determine her mental RFC, particularly in regards to the evaluation of Plaintiff's subjective symptoms and the medical opinion of her treatment provider, Dr. Liebich. (Pl. Mot. 11-15.) Third, Plaintiff contends that the ALJ failed to support his finding at Step Five that Plaintiff was capable of performing jobs available in the national economy. (Pl. Mot. 13-17.) Plaintiff also makes a broad argument the ALJ's decision indicates that he assumed that Plaintiff must be "utterly incapacitated 24 hours a day, seven days a week to qualify for disability." (Pl. Mot. 7.) After reviewing the briefs and record evidence, this Court finds that the ALJ supported his conclusion with substantial evidence as required and did not commit revisable error.

A. The ALJ Properly Determined Plaintiff's Mental Impairments Did Not Meet or Equal a Listing.

Plaintiff argues that the ALJ failed to properly support his finding that Plaintiff's mental impairments did not meet a listing at Step Three. (Pl. Mot. 9-10.) Plaintiff challenges the ALJ's findings and argues that the ALJ "leapt" from acknowledgments of

Plaintiff's impairments to stating her limitations were accommodated by the RFC and not discussing the opinion of Plaintiff's treatment provider Dr. Liebich at Step Three. (Pl. Mot. 9-10.) After considering Plaintiff's arguments, the Court concludes that the ALJ supported with substantial evidence his finding that Plaintiff's mental impairments did not meet or equal a listing at Step Three.

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). To meet the listing for a mental impairment, a Plaintiff must satisfy the Paragraph B criteria by showing an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E). In this case, at Step Three the ALJ analyzed listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor related disorders) and found that Plaintiff had only moderate limitations in all four of these functional areas. (R. 18-19.)

For understanding, remembering, and applying information, the ALJ acknowledged Plaintiff's reports of severe anxiety preventing her from attending school

and interfering with her ability to get a driver's license. (R. 18, citing R. 46, 2046-53.) The ALJ noted though that at Plaintiff's consultative psychological exam, she had intact memory, could perform calculations, interpret proverbs, and recite facts. (R. at 18, citing R. 2046-53.) Additionally, the ALJ recognized that Plaintiff graduated high school, took college classes in art, and reported being able to do chores at home and take care of her mother. (R. 18, citing R. 47, 312-19.) The ALJ found that this evidence "was consistent with a moderate limitation in this area." (R. 18.) The ALJ noted that this evidence meant that Plaintiff could understand, understand, remember and carry out simple instructions, and use judgment to make simple work-related decisions. (R. 18-19.)

For interacting with others, the ALJ recognized Plaintiff's significant social anxiety but noted that Plaintiff was able to leave home and attend class and medical appointments. (R. 19, citing R. 43-50, 2046-53.) The ALJ found that Plaintiff had a moderate limitation in this area. (R. 19.) This evidence supported the RFC determination  that Plaintiff could tolerate occasional interactions with supervisors and coworkers, and no interactions with the general public. (*Id.*)

For concentration, persistence, and pace, the ALJ considered that Plaintiff received accommodations in school but also that she was able to do attend to tasks of concentration at a consultative exam, her attention and concentration were intact at medical appointments, and she engaged in activities at home including chores and computer games. (R. 19, citing R. 316, 2046-53, 2350-2740.) The ALJ found this evidence

to be "supportive of a moderate limitation." The ALJ again pointed to his RFC determination and noted that Plaintiff could not perform work requiring a specific production rate such as assembly line work, but could tolerate end-of-day quotas. (R. 19.)

Finally, for adapting and managing oneself, the ALJ considered Plaintiff's several emergency room visits for her mental health, her 2021 hospitalization, and periods of suicidal ideation. (R. 19, citing R. 1344-1498.) The ALJ also noted that Plaintiff had done well with medications and had no hospitalizations since 2021. (R. 19, citing R. 2350-2740.) Further, the ALJ considered Plaintiff's ability to go out in public and maintain a relationship with her mother. (R. 19, citing R. 46-47, 312-19.) The ALJ found this evidence supported a moderate limitation in the area of adapting and managing oneself. The ALJ additionally cited his RFC findings, noting that Plaintiff could deal with occasional changes in a routine work setting. (R. 19.)

The ALJ provided sufficient analysis to support his finding that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04, 12.06, 12.15. *See Wilder*, 22 F.4th at 652. Plaintiff's argument that the ALJ impermissibly "leapt" from acknowledging Plaintiff's impairments to stating that he adequately accommodated Plaintiff's impairments in the RFC is without merit. (Pl. Mot. 10.) The ALJ properly followed the sequential evaluation required by the regulations, 20 C.F.R. § 404.1520(a)(4), and provided a thorough discussion of each of the paragraph B criteria,

citing evidence to support his findings of moderate limitations in each area. (R. 18-19.) Nothing more is required.

Second, Plaintiff argues the ALJ erred by not discussing the medical opinion of her treating psychologist Erin Liebich, Psy.D. at Step Three. (Pl. Mot. 10-11.) This argument is unavailing because the ALJ evaluated Dr. Liebich's opinion later in the decision in compliance with the regulations and found it unpersuasive (R. 25.) An ALJ's decision must be read as a whole, and in this case, the ALJ finding Dr. Liebich's opinion unpersuasive supports his findings that Plaintiff's impairments did not meet or equal a listing. *See James K. v. O'Malley*, No. 21-CV-50041, 2024 WL 4301196, at *3 (N.D. Ill. Sept. 26, 2024) (citing *Buckanon on behalf of J.H. v. Astrue*, No. 08-C-221, 2009 WL 10699462, at *3 (E.D. Wisc. Jan. 8, 2009) ("[A]n ALJ's decision is to be read as a whole, and after reading the ALJ's decision in its entirety, the court finds that the ALJ's analysis . . . provides an adequate explanation of the ALJ's conclusion that the plaintiff's impairments, or combination of impairments, do not meet or medically equal a listing in the Listing of impairments.")).

Plaintiff's related argument that Dr. Liebich's opinion and other evidence supported a finding of disability at Step Three similarly lacks merit and amounts to an impermissible request to have this Court reweigh the evidence in Plaintiff's favor. *See Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024). Here, the ALJ supported his

findings that Plaintiff's impairments did not meet or equal a listing. The Court affirms the Commissioner's findings on this issue.

B. The ALJ Properly Assessed Plaintiff's Mental RFC

Plaintiff next argues that, even if the ALJ's listing analysis was correct, he failed to properly account for Plaintiff's moderate limitations in mental functioning when assessing her mental RFC. (Pl. Mot. 11-15.) Specifically, Plaintiff challenges the ALJ's evaluation of her subjective symptoms and Dr. Liebich's opinion. Separately, she, alleges the ALJ erred in failing to assess her limitations in the context of a full-time work environment. (*Id.*). After considering Plaintiff's arguments, the Court concludes that the ALJ properly assessed Plaintiff's mental RFC and supported his findings with substantial evidence.

1. The ALJ Properly Evaluated Plaintiff's Subjective Symptoms.

Plaintiff argues that the ALJ failed to support his finding that Plaintiff's symptoms were inconsistent with the evidence, essentially an argument that the ALJ erred in evaluating her subjective symptoms. (Pl. Mot. 11-14.)

When reviewing an ALJ's assessment of Plaintiff's symptoms, this Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). As long as an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility

determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Seventh Circuit has even stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

As the regulations outline, ALJs consider several factors when evaluating a plaintiff's subjective symptoms, including objective medical evidence and other evidence including a plaintiff's daily activities, the type, dosage, and effectiveness of medications, and other forms of treatment. 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In this case, the ALJ first acknowledged Plaintiff's "history of several psychological impairments." (R. 21.) He particularly noted Plaintiff's "history of selective mutism, severe social anxiety, as well as some difficulties with attention and, to some degree, impulsivity." (R. 21, citing R. 2054.) The ALJ also recognized Plaintiff's statements that she gets anxious and dissociates when she is around too many people and misses her college classes frequently due to anxiety. (R. 24.)

Having acknowledged these impairments and symptoms, the ALJ provided a lengthy review of the evidence on which he based his finding that Plaintiff's mental limitations were not as severe as she alleged. (R. 21-24.) In accordance with his duties, the ALJ weighed Plaintiff's subjective complaints and evaluated them against the record. Specifically, the ALJ discussed how Plaintiff had both therapy and medication

treatment and participated in a partial hospitalization and intensive outpatient program in 2018 and 2019. (R. 21, citing R. 656, 735.) The ALJ also noted that Plaintiff's symptoms worsened in 2021 and in October of that year Plaintiff's expressed suicidal ideation and was hospitalized. (R. 22-23, citing R. 1889.) The ALJ highlighted that subsequently in 2022, Plaintiff changed medications and her mood improved. (R. 23, citing R. 1295, 1303.) Similarly in September 2023, Plaintiff reported she was doing well on her medication. (R. 23, citing R. 2532.) Additionally, the ALJ highlighted the most recent treatment note in record from March 2024 where Plaintiff reported her medications were controlling her "previous symptoms of anxiety and depression." (R. 23-24, citing R. 2548.) *See* 20 C.F.R § 404.1529(c)(3)(iv)-(v) (ALJs will consider medication and other treatment for relief of pain or symptoms).

The ALJ also directly considered Plaintiff's daily activities. (R. 23-24.) The ALJ noted that by November 2022 Plaintiff had returned to school and was doing well and had overall less anxiety. (R. 23, citing R. 2510.) In March 2023, Plaintiff followed up and reported she was doing well and attending class in person and would go grocery shopping with her mother. (R. 23, citing R. 2518.) The ALJ also discussed Plaintiff's hearing testimony where Plaintiff discussed attending college classes-in person and socializing with friends. (R. 24, discussing R. 46-48.) *See* 20 C.F.R. § 404.1529(c)(3)(i); *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (the ALJ properly

considered claimant's activities to determine whether her symptoms were as severe and limiting as she alleged).

The ALJ summarized his subjective symptom analysis and noted that records "showed the claimant was stable with medication, and although she had social anxiety and a depressed mood, she was also able to socialize and complete schoolwork." (R. 24.) In acknowledging Plaintiff's subjective symptoms and then addressing Plaintiff's treatment history and daily activities, the ALJ provided sufficient rationale for finding Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 20.) Thus, this Court finds the ALJ's analysis was not "patently wrong." *See Deborah M.*, 994 F.3d at 789.

Plaintiff argues the ALJ's analysis was in error and "cherry picked" evidence of Plaintiff's subjective reports and improperly considered her daily activities while ignoring the findings of treatment providers. (Pl. Mot. 11-13.) This argument is unavailing because as discussed above the ALJ considered Plaintiff's mental impairments, treatment history (including her improvement with medication), and Plaintiff's daily activities in accordance with the regulations to find Plaintiff's symptoms not as severe as alleged. (R. 21-24.)

Plaintiff's argument asks this Court to reweigh, and cherry pick the record in her favor, which is impermissible. *See Chavez*, 96 F.4th at 1021; *See also Miller v. Colvin*, No. 12-50440, 2015 WL 1915658, at *6 (N.D. Ill. Apr. 27, 2015) ("If an ALJ may not cherry

pick medical records in an attempt to highlight only the 'good days,' then a claimant cannot cherry pick medical records to only highlight the bad days."). Also, as the Defendant observes, the issue in this case is whether Plaintiff has been disabled as an adult and Plaintiff primarily raises evidence of her impairments from when she was a child (Def. Mem. 1, 4, citing 20 C.F.R. § 404.350(a)).

Plaintiff additionally argues that the ALJ erred in not considering the consistency of Plaintiff's mother's statements with Plaintiff's alleged symptoms. (Pl. Mot. 13-14.) Plaintiff's mother completed a third-party report in December 2022 in which she reported Plaintiff had severe anxiety and depression but also took art classes and did chores around the house. (R. 312-19.) Contrary to Plaintiff's argument, the ALJ did consider this third-party report's consistency with the record. (R. 25.) While the ALJ found that the report had "no persuasive value" due to Plaintiff's mother not being a medical source, the ALJ also noted that it was "somewhat consistent with the overall record, which shows the claimant has anxiety and depressive symptoms, but has been stable with treatment." (*Id.*) Plaintiff's argument again asks for impermissible reweighing of evidence and is unavailing. Thus, the Court affirms the Commissioner's findings on the issue of the subjective symptom evaluation.

2. The ALJ Properly Evaluated Dr. Liebich's Opinion.

Plaintiff argues that the ALJ failed to support his finding that the medical opinion of Plaintiff's treating psychologist, Dr. Liebich, was unpersuasive. (Pl. Mot. 14.)

Dr. Liebich completed a "Functional Capacity Questionnaire" for Plaintiff in March 2023. (R. 2346-49.) Dr. Liebich checked boxes and wrote short notes indicating Plaintiff had several mental limitations including that she would be unable to complete normal workday without interruptions from her symptoms and would be absent more than four days a month. (*Id.*)

When evaluating the persuasiveness of a medical opinion, an ALJ considers the opinion's supportability and consistency, the doctor's relationship with the claimant, his specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). An ALJ's decision must explain how she considered the factors of supportability and consistency, but he is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ found Dr. Liebich's opinion unpersuasive and explained that it was not consistent with the record, noting that treatment notes "show that despite the claimant's impairments, she was attending college and doing well, and she testified she was able to socialize and spend time with friends." (R. 25.) The ALJ also addressed supportability, finding that "Dr. Liebich did not support her conclusions with objective findings." (*Id.*) Thus, the ALJ properly evaluated Dr. Liebich's opinion in accordance with the regulations and Plaintiff's brief argument to the contrary is unavailing and again impermissibly suggests this Court should reweigh evidence in her favor. *See*

*Chavez*, 96 F.4th at 1021. The Court affirms the Commissioner's findings on the issue of Dr. Liebich's opinion.

3. The ALJ Properly Assessed Plaintiff's Limitations in the Context of a Full-Time Work Environment.

Plaintiff next argues that the ALJ failed to assess her limitations in the context of a full-time work environment, focusing specifically on the ALJ's consideration of her limitations in concertation, persistence, and pace. (Pl. Mot. 14-15.) Plaintiff also makes the broad argument the ALJ's decision indicates that he assumed that Plaintiff must be "utterly incapacitated 24 hours a day, seven days a week to qualify for disability." (Pl. Mot. 7.)

The Defendant counters, and the Court agrees, that the ALJ's reliance on the prior administrative medical findings demonstrates the ALJ gave appropriate consideration to Plaintiff's limitations in concentration, persistence, and pace in the context of a full-time work environment. (Def. Mem. 11-13.) On initial consideration, Steven Fritz, Psy.D assessed that Plaintiff had a moderate limitation in the area of concentration, persistence, and pace and that Plaintiff was limited to simple routine tasks and should not interact with the public and have reduced interactions with coworkers. (R. 65-69, 74-78, 84-88.) On reconsideration, Howard Tin, Psy.D., largely agreed with Dr. Fritz's findings. (R. 94-97.) The ALJ found these prior administrative medical findings persuasive but explained that he "added additional limitations to

account for the claimant's subjective complaints." (R. 24.) *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence.") Specifically, the ALJ agreed with the state agency doctors that simple tasks accommodated a moderate limitation for concentration, persistence, and pace but also added further limitations accommodating Plaintiff's symptoms including a limitation for no production rate work. (R. 20.) This amounts to substantial evidence supporting the ALJ's RFC finding, a threshold which is "not high. *Biestek*, 587 at 103 (2019).

Plaintiff also makes the broad argument that the ALJ's decision is marred with the mistaken assumption that Plaintiff must "utterly incapacitated 24 hours a day, seven days a week to qualify for disability." (Pl. Mot. 7.) This argument lacks merit. As Defendant observes, there is nothing in the ALJ's decision that suggests the ALJ applied a different standard of disability to Plaintiff's claim. (Def. Mem. 5-6.) Rather the ALJ properly performed the sequential evaluation and assessed Plaintiff's RFC which by definition considers a claimant's ability to "do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Thus, all of Plaintiff's arguments on this issue lack merit and the Court affirms the ALJ's mental RFC finding.

C. The ALJ Supported His Step Five Finding with Substantial Evidence.

Plaintiff's final argument is that the ALJ's Step Five finding was unsupported. (Pl. Mot. 15.) Plaintiff specifically argues that all three of the jobs the ALJ relied on required constant contact with coworkers and supervisors and performance of work at a set pace, which is inconsistent with the ALJ's RFC assessment and thus constitutes a violation of SSR 00-4p. (*Id.*)

SSR 00-4p, which was in effect for this ALJ's decision, requires an ALJ to determine the consistency of a vocational expert's (VE) testimony with the Dictionary of Occupational Titles (DOT). SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). In this case, the ALJ asked the VE about any conflicts and she replied that there were no conflicts but she discussed issues unaddressed in the DOT, including the amount of interaction with others. (R. 57-58.) The ALJ then found that the VE's testimony was consistent with the information contained in the DOT. (R. 26.)

Plaintiff argues that the RFC conflicts with job descriptions found in the "Revised Handbook for Analyzing Jobs" (RHAJ, 1991). (Pl. Mot. 15.) This argument is unavailing because SSR 00-4p requires only the evaluation of potential conflicts with the DOT and its companion publication the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), not the Handbook. *See* SSR 00-4p; *see also Stromske v. Colvin*, No. 14-CV-1243-CJP, 2015 WL 6750057, at *5 (S.D. Ill. Nov. 5, 2015) ("However, SSR-04p does not require an ALJ to enquire into conflicts with the *Revised Handbook for Analyzing Jobs."*)

Further, none the DOT descriptions of the three jobs the ALJ relied on at Step Five demonstrate the conflicts alleged by Plaintiff. (R. 25-26.) *See* Laboratory equipment cleaner (DOT 381.687-022), 1991 WL 673259; Cleaner (DOT 381.687-018), 1991 WL 673258; Cleaner II (DOT 919.687-014), 1991 WL 687897. The DOT indicates that these positions require performing repetitive or short-cycle work, not work at a set pace and does not indicate that any of these positions require constant contact with supervisors and coworkers. (*Id.*) Thus, Plaintiff's Step Five argument is unavailing and the Court affirms the ALJ's mental RFC finding.

Overall, the ALJ provided specific reasons, supported by the record, for his assessment of Plaintiff's symptoms and overall RFC determination. This Court will not reweigh the evidence and does not find the ALJ's analysis patently wrong. After considering the briefs and supporting record, this Court finds that the ALJ supported his RFC determination with substantial evidence.

CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for summary judgment brief (Dkt. 10) and grants Defendant's motion. (Dkt. 13.)

SO ORDERED.

Laura K. McNally

LAURA K. MCNALLY
United States Magistrate Judge

September 25, 2026